UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| ROSEMOND R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:22-cv-225-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Rosemond R. ("Plaintiff") brings this action pursuant to the Social Security Act
(the "Act"), seeking review of the final decision of the Commissioner of Social Security (the
"Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under
Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI
of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g),
1383(c), and the parties consented to proceed before the undersigned in accordance with a standing
order (*see* ECF No. 15).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil
Procedure 12(c). *See* ECF Nos. 11, 12. Plaintiff also filed a reply brief. *See* ECF No. 13. For the
reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is
**DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 12) is
**GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for DIB on April 17, 2019, and an application for
SSI on September 24, 2019. Transcript ("Tr.") 17. In both applications, Plaintiff alleged disability
beginning November 17, 2018 (the disability onset date), due to back issues, neck issues, herniated

discs, and bulging discs. Tr. 17, 210. The claims were denied initially on January 27, 2020, and again on reconsideration on March 5, 2020, after which Plaintiff requested an administrative hearing. Tr. 17. On October 30, 2020, Administrative Law Judge Timothy McGuan ("the ALJ") conducted a conducted a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Anthony Demarco, an attorney. Tr. 17, 36. Stella J. Frank, an impartial vocational expert, also appeared and testified. Tr. 17.

The ALJ issued an unfavorable decision on November 10, 2020, finding that Plaintiff was not disabled. Tr. 14-28. On January 31, 2022, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's November 10, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 17.

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his November 10, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since her alleged onset date of November 17, 2018 (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: obesity with BMI at 41; spondylosis with L5-S1 disk herniation and the herniation catching the S1 nerve roots bilaterally; S1 radiculopathy on the right (20 CFR 404.1520(c) and 416.920(c)).).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 20 CFR 416.967(a)[2] except no climbing ropes, ladders or scaffolds; occasionally climb ramps/stairs; occasionally balance, stoop, kneel, crouch and crawl and can occasionally reach bilaterally.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 4, 1979 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

---

[2] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 17, 2018, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 17-28.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on April 17, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 28. The ALJ also determined that based on the application for supplemental security income protectively filed on September 24, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because the ALJ "put the cart before the horse and improperly relied on his lay opinion over the opinions of medical providers." *See* ECF No. 11-1 at 1, 10-18. Plaintiff argues that, because the ALJ found every opinion in the record unpersuasive[3] and the other evidence in the record was insufficient, the ALJ was not able to make an RFC finding based on a complete medical history. *See id*. at 12-13. Accordingly, argues Plaintiff, the ALJ improperly relied on his own lay interpretation of the raw medical evidence to craft an RFC. *See i*d. at 15.

---

[3] Plaintiff's brief states that "the ALJ found every opinion in the record *persuasive*" (emphasis added), but this is clearly a typographical error. *Compare* ECF No. 11-1 at 12 *with* Tr. 26.

In response, the Commissioner argues that the ALJ properly determined that Plaintiff retained the RFC to perform a wide range of sedentary work despite her complaints of left foot and lower back pain. *See* ECF No. 12-1 at 14-21. The Commissioner further argues that the ALJ properly evaluated all the relevant evidence, including the opinion evidence, Plaintiff's unremarkable physical examination findings, and the other objective medical evidence of record, and the ALJ's RFC finding was supported by substantial evidence. *See id*. at 14-16. With respect to the opinion evidence, the Commissioner argues that the ALJ was not required to rely directly on a medical source opinion in assess Plaintiff's RFC, but rather the ALJ was free to accept those portions of a medical opinion that are supported by the record while rejecting those portions that are unsupported. *See id*. at 16-19. Finally, argues the Commissioner, because the evidence of record was sufficient for the ALJ to make an informed disability decision, the ALJ was not required to further develop the record, as Plaintiff argues. *See id*. at 21-22.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ's analysis of the opinion evidence, as well as his RFC finding are supported substantial evidence. Furthermore, the ALJ was not required to base the RFC directly on any medical opinion, as Plaintiff argues. In addition to the opinion evidence, the ALJ properly considered Plaintiff's treatment history, including Plaintiff's unremarkable examination findings and other objective medical evidence of record, and

reasonably determined that Plaintiff retained the RFC to perform sedentary work. Tr. 21-26. Because substantial evidence supports the ALJ's decision, the Court finds no error.

On November 20, 2018, Plaintiff presented to the Emergency Department ("ED") at Sisters of Charity Hospital, complaining of left heel pain. Tr. 291-301. Plaintiff reported that her symptoms started on November 19, 2018, when "[she] hurt [her] left ankle at work with a cart yesterday." Tr. 294. An imaging study of the left calcaneal showed no evidence of fracture or dislocation and a plantar calcaneal spur likely associated with chronic plantar fasciitis. Tr. 291. Plaintiff was assessed with a left foot contusion and discharged home the same day. Tr. 298.

On December 13, 2018, Plaintiff was seen by Jerry Ulatowski, M.D. ("Dr. Ulatowski"), at WNY Immediate Care, for a follow-up examination of her left foot. Tr. 478-79. Plaintiff requested to see a neurologist and to have a CT scan and noted that she was unable to work because "she needs to use public transportation." Tr. 478. Dr. Ulatowski observed that Plaintiff's gait was normal; she exhibited no difficulty rising from a seated position; and she demonstrated full motor strength and normal sensations. *Id*. She denied any spinal complaints; her left heel was tender to palpitation; and her left foot exhibited normal flexion and extension, no edema, normal heel insertion, and an intact Achilles tendon. *Id*. Dr. Ulatowski diagnosed left foot contusion, and Plaintiff "was referred to Northtown Ortho at her request for specialist care." Tr. 478-79.

On February 1, 2019, Plaintiff attended an initial evaluation with orthopedic surgeon Philip Stegemann, M.D. ("Dr. Stegemann"), at UBMD Orthopedics, regarding her complaints of left ankle and right shoulder pain. Tr. 364-66. On examination, Dr. Stegemann observed that Plaintiff's gait was "fairly" normal with some left heel tenderness, and her shoulders exhibited full ranges of motion with some right shoulder tenderness. Tr. 365. Dr. Stegemann noted that left ankle x-rays

revealed a small plantar heel spur and right shoulder x-rays were unremarkable (Tr. 365, 755-56) and assessed right shoulder strain and a left heel contusion (Tr. 366).

On January 2, 2019, Plaintiff attended a physical therapy evaluation for ankle pain and leg pain due to a work injury. Tr. 317. On examination, Plaintiff had numbness and weakness; tenderness to palpation throughout her entire foot; and positive straight leg raise ("SLR") test and slump test results. *Id*. Lumbar range of motion was moderately reduced on flexion, extension, and left side gliding. *Id*. Her provider noted that she "presents with signs and symptoms consistent with a lumbar derangement causing left lower extremity peripheral symptoms." Tr. 318.

On January 10, 2019, Plaintiff reported to primary care provider Charles Amelemah, M.D. ("Dr. Amelemah"), at Mercy Comprehensive Care Center ("Mercy Comprehensive Care"), that physical therapy was helping her back pain and ankle. Tr. 410. On examination, there was mild lumbar paraspinal tenderness, but the examination was otherwise normal. Tr. 411. Dr. Amelemah assessed "lumbago with sciatica" bilaterally and prescribed Tramadol. *Id*.

On February 11, 2019, Plaintiff was discharged from physical therapy due to cancellations and no shows. Tr. 319. She had attended only two treatments and had not been seen in over a month. *Id*.

On March 19, 2019, Plaintiff had a follow-up visit with Dr. Stegemann. Tr. 368-70. Plaintiff reported that her right shoulder and left ankle pain were resolved, but her lower back pain continued. Tr. 368. Dr. Stegemann observed that Plaintiff's gait was normal; she was asymptomatic across her knees, ankles, left foot, and right shoulder; and he assessed no restrictions due to Plaintiff's left heel contusion and/or her right shoulder strain. Tr. 368-69.

On April 16, 2019, Plaintiff underwent an Independent Orthopedic Medical Evaluation with Craig Chertack, M.D. ("Dr. Chertack"), in connection with her workers' compensation claim.

Tr. 482-87. Plaintiff reported pain in her shoulder, foot, and back. Tr. 482. She reported that she could clean and do light cooking and dish washing, but she did not do any mopping or sweeping; her family does the shopping; and she stated she was unable to bend over to pick up things. *Id.* She also reported she was able to drive. *Id.* Upon examination, Dr. Chertack observed that Plaintiff's gait was normal; she exhibited no difficulty rising from a seated position or removing her shoes; she exhibited no pain with manipulation; and her feet exhibited full ranges of motion. Tr. 484. Dr. Chertack also observed that Plaintiff's left heel exhibited no swelling, and palpitation of the left heel when Plaintiff was distracted was "totally asymptomatic." *Id.* Dr. Chertack also observed that Plaintiff bent forward to put on her shoes; she stood up from the examination table with no difficulty; and she picked up her coat off a chair and put it on with no difficulty. Tr. 485. He also noted that Plaintiff had normal motor strength of the legs bilaterally L3-S1 without evidence of abnormality. *Id.* Dr. Chertack opined that Plaintiff's examination was objectively within normal limits and stated there was "no organic objective evidence" of disability of the back or impairment to the left foot. *Id.* Dr. Chertack also noted that "[s]ymptom magnification appear[ed] to be a substantial component" of Plaintiff's examination. *Id.* He opined that Plaintiff was able to return to full duties of the job and recommended a gradual return to the work environment. Tr. 485-86.

On April 22, 2019, Plaintiff attended a chiropractic evaluation with Julius P. Horvath, D.C. ("Dr. Horvath"). Tr. 378. Dr. Horvath opined that Plaintiff was "totally incapacitated" for the period April 22, 2019, to April 30, 2019. Tr. 488. Dr. Horvath further opined that Plaintiff's disability status was a result of injuries sustained at work on November 17, 2018, and her tentative return-to-work date was scheduled for May 1, 2019. *Id.*

Plaintiff was seen by Dr. Amelemah on May 22, 2019, complaining of worsening back pain after falling on the stairs and injuring her lower back. Tr. 398-99. Plaintiff reported pain radiating to the left buttocks area. Tr. 398. Dr. Amelemah assessed hypertension, obesity, acute left-sided low back pain with left-sided sciatica, and back spasm, and prescribed cyclobenzaprine. Tr. 399.

On June 19, 2019, Dr. Amelemah examined Plaintiff for complaints of left foot swelling and lower back pain. Tr. 395-96. On musculoskeletal examination, Plaintiff had normal range of motion; no swelling; tenderness to palpation on dorsum and foot muscle in plantar arch; mild left lumbar paraspinal muscle tenderness; and negative SLR testing. Tr. 396. Among other things, Dr. Amelemah assessed lumbago with sciatica, bilaterally, and left foot sprain. *Id*.

On July 1, 2019, Plaintiff attended an initial neurosurgical consultation with Neal Siejka, PA-C ("Mr. Siejka"), at Eric P. Roger, M.D. Neurosurgery ("Roger Neurosurgery"), for back and bilateral leg pain with numbness and tingling. Tr. 349. Plaintiff reported that her symptoms stemmed from a work injury when she was struck by a coffee cart and fell over it. Tr. 349. Plaintiff reported that she had attempted pain management, physical therapy, and chiropractic maintenance. Tr. 350. She also reported other symptoms, including bladder dysfunction and sexual dysfunction. Tr. 350. She stated that her pain was on average 9/10 or 10/10 and "was exacerbated with most activities [and] alleviated by nothing." *Id*. On examination, Plaintiff exhibited antalgic gait and had mild difficulty standing from a seated position, and deep tendon reflexes ("DTR") were +1 in upper and lower extremities. Tr. 351. Mr. Siejka discussed further conservative treatment options, which "could include various medications, physical therapy, chiropractic care, traction, epidural injections, etc.," and recommended that conservative management to avoid surgery was the safest

course of action provided that Plaintiff was able to deal with the pain. Tr. 353. Otherwise, "surgical intervention may be a valid option." *Id*.

On August 26, 2019, Plaintiff was seen by Eric P. Roger, M.D. ("Dr. Roger"), at Roger Neurosurgery, for a repeat spinal evaluation. Tr. 337-42. Dr. Roger observed that Plaintiff's physical examination findings were unchanged since July 1, 2019, and noted that an MRI of Plaintiff's lumbar spine revealed severe spondylosis at the L5-S1 level with a central disc herniation. Tr. 340, 381. Dr. Roger assessed "other spondylosis with radiculopathy, lumbar region" and "sprain of ligaments of lumbar spine, subsequent encounter." Tr. 341. Dr. Roger again discussed conservative treatment options versus surgery which would consist of L5-S1 ALIF (anterior lumbar interbody fusion) and offer a 60% success rate of significantly improving or alleviating Plaintiff's back pain. *Id*. Because Plaintiff was "very nervous about surgery," Dr. Roger referred Plaintiff to Dr. Suchy for lumbar injections. *Id*. He also assessed that Plaintiff had a 100% temporary impairment. Tr. 342.

On August 28, 2019, Plaintiff attended a follow-up primary care visit for hypertension with Joan Oswald, NP ("Ms. Oswald"), at Mercy Comprehensive Care. Tr. 583-85. Plaintiff reported continued back pain and requested a refill of her pain medication; however, Ms. Oswald advised Plaintiff that she would need to see her workers' compensation provider to renew her pain medications. Tr. 583.

On October 29, 2019, Dr. Chertack conducted a follow-up examination in connection with Plaintiff's workers' compensation claim. Tr. 491-96. Plaintiff complained of ongoing back pain but reported that her left foot pain had improved. Tr. 491. Upon examination, Dr. Chertack observed that Plaintiff had no difficulty rising from a seated position and walking into the examination room; demonstrated no motor, sensory, or reflex deficits; and SLR testing was

negative bilaterally. Tr. 493. Dr. Chertack concluded that there was no indication of any ongoing foot problems and noted that Plaintiff indicated that her foot problem was "resolved." Tr. 494. However, she continued to have "ongoing problems with her lower back and radiculopathy symptoms." *Id*. Dr. Chertack opined that Plaintiff's current degree of disability was "66-2/3" and she could perform no more than a largely sedentary job with occasional lifting of up to ten pounds and no repetitive bending, twisting, nor turning. Tr. 494. He further opined that Plaintiff "cannot be standing at the sink; cannot be doing food prep; cannot be loading, unloading materials in and out of a cart; and she would be able to do pushing of a cart over short distances." *Id*. Dr. Chertack recommended an evaluation by a pain management specialist and consideration of epidural injections for Plaintiff's back pain. *Id*.

On November 7, 2019, Plaintiff attended an initial pain management consultation with Bernard Hsu, M.D. ("Dr. Hsu"). Tr. 335-36. On examination, lumbar range of motion was moderately limited in all directions with stiffness and spasms; there was tenderness and trigger points in the bilateral lumbar paraspinals and point tenderness in the sacral region; 5/5 strength in the upper and lower extremities; positive SLR bilaterally; +1 DTR in upper and lower extremities; and no sensory deficits. Tr. 336. Because Plaintiff was hesitant to undergo any invasive procedures, Dr. Hsu administered trigger point injections in the bilateral lumbar paraspinal region. Tr. 336, 676.

On December 13, 2019, Plaintiff presented for a follow-up spinal evaluation with Mr. Siejka at Roger Neurosurgery.  Tr. 328-31. Plaintiff reported continued severe low back pain with a lesser element of radiating buttock and leg pain. Tr. 328. Mr. Siejka noted "early improvement" from injections and therapy, and although Plaintiff was still contemplating surgery, she wanted to give conservative treatment more time. *Id*. On examination, Mr. Siejka noted antalgic gait;

moderate difficulty standing from seated position,; no paravertebral muscle rigidity; full 5/5 strength and normal sensation; and negative SLR test. Tr. 331. Thereafter, on December 18, 2019, Plaintiff received another round of trigger point injections from Dr. Hsu. Tr. 323-27. Plaintiff reported that she "got good relief for about 3 weeks before it started to wear off." Tr. 326. She stated that Dr. Roger did not want to do surgery unless it was necessary. *Id*.

On January 20, 2020, Plaintiff attended a consultative internal medicine examination with John Schwab, D.O. ("Dr. Schwab"). Tr. 683-87. Plaintiff complained of lower back pain that radiated down the left lower extremity, more so than the right, with numbness in the left foot only. Tr. 683. On examination, Dr. Schwab noted that Plaintiff was 5'5" tall and weighed 240 pounds and appeared to be in no acute distress.  Tr. 684. He also noted normal gait and stance; no difficulty getting on and off the examination table or rising from a seated position; full ranges of motion throughout her spine; and negative SLR bilaterally. *Id*. Plaintiff demonstrated full muscle strength and full ranges of motion, as well as normal reflexes and sensations throughout her arms and legs, except for decreased sensation in her left foot. *Id*. Plaintiff's hand and finger dexterity were intact, and she demonstrated full grip strength bilaterally. Tr. 685. Cervical spine x-rays revealed straightening of the normal cervical lordosis. Tr. 685, 686. Dr. Schwab diagnosed history of lower back pain and assessed no restrictions. Tr. 685.

On January 24, 2020, state agency medical consultant J. Lawrence, M.D. ("Dr. Lawrence"), opined that Plaintiff was able to lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently; stand and or walk about 6 hours; sit about 6 hours; occasionally climb ladders, ropes and scaffolds and frequently stoop. Tr. 58-60.  Dr. Lawrence opined that Plaintiff had the residual functional capacity for medium work. *Id*.

On March 5, 2020, state agency medical consultant, J. Koenig, M.D. ("Dr. Koenig"), opined that Plaintiff was able to lift, carry, push and pull 20 pounds occasionally, 10 pounds frequently; stand and or walk about 6 hours; sit about 6 hours; occasionally climb ladders, ropes and scaffolds; and occasionally stoop. Tr. 85, 97. Dr. Koenig opined that Plaintiff had the residual functional capacity for light work. Tr. 87, 99.

On March 9, 2020, Plaintiff attended a follow-up spinal evaluation with Dr. Roger. Tr. 716-19. She was still waiting for her pain management evaluation with Dr. Succhy. Tr. 716. She continued to rate her pain as 9/10 on average and 10/10 worst. Tr. 717. Plaintiff's examination findings were unchanged, and she decided to defer a decision about surgery until "next winter." Tr. 720.

On April 24, 2020, Plaintiff followed up with Dr. Hsu for trigger point injections. Tr. 694-98. She reported improvement from her last injection and felt it was "urgent" to have another injection done. Tr.  697. Plaintiff also reported that the combined treatment of injections and muscle relaxers had been helpful. *Id*. On examination, lumbar range of motion was moderately limited in all directions, with associated stiffness and spasm; she had bilateral lumbar paraspinal trigger points and tenderness; and SLR was positive bilaterally. Tr. 697. She followed up again on June 16, 2020, noting there was initial relief, but the pain had returned. Tr. 695. Dr. Hsu noted that Plaintiff continued to see Dr. Roger, but she did not yet wish to undergo surgery. *Id*. Examination was unchanged, and she underwent repeat injections. Tr. 695-96.

On July 6, 2020, Plaintiff attended a telemedicine follow-up visit with Mr. Siejka at Roger Neurosurgery. Tr. 707-12. Once again, Mr. Siejka outlined treatment options, including continuing conservative management versus surgery. Tr. 711. He indicated that Plaintiff was "leaning towards surgery but would like time to consider her options." *Id*.

As noted above, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ improperly relied on his lay opinion over the opinions of medical providers. *See* ECF No. 11-1 at 1, 10-18. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."

*Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27,

2017). Here, Plaintiff filed her claims on April 17, 2019, and September 24, 2019, and therefore, the 2017 regulations are applicable to her claims.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id.* The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id.*

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id.* Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id.* Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id.*

17

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's arguments, the ALJ properly considered the opinion evidence and relied on other evidentiary sources to make an RFC finding that accounted for all of Plaintiff's credible limitations, as supported by the record. Tr. 21-26.  *See* 20 C.F.R. §§ 404.1527, 416.927.

Furthermore, the ALJ was not required to rely on an opinion that mirrored the RFC, as Plaintiff argues. *See* ECF No. 11-1 at 11-15. Plaintiff's argument wrongly presumes that RFCs are medical determinations, and thus, outside the ALJ's expertise. As explained above, however, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Moreover, there is no requirement that an ALJ's RFC finding be based on a medical opinion at all. *See, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where ALJ rejected sole medical opinion in record speaking to mental functioning). Thus, contrary to Plaintiff's argument, the ALJ was not required to craft an RFC that mirrored a medical opinion and was not bound to adopt the entirety of any opinion. *Schillo v. Kijakazi*, 31 F.4th 64, 77-78 (2d Cir. Apr. 6, 2022) (affirming where the ALJ declined to adopt the limitations set forth in three treating source opinions, and the RFC finding did not match any opinion in the record); *see also Camille v. Colvin*, 652 F. App'x 25, 28 n. 5 (2d Cir. 2016) ("The ALJ used Dr. Kamin's opinion

as the basis for the RFC but incorporated additional limitations based on *inter alia*, the testimony of Camille that she credited.").

Here the ALJ clearly explained his findings regarding the persuasiveness of the medical opinions in terms of the "most important factors" of supportability and consistency. Tr. 26.   *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Consultative examiner Dr. Schwab assessed no limitations (Tr. 685); state agency medical consultant Dr. Lawrence assessed that Plaintiff was able to perform medium work (Tr. 58-60); and state agency medical consultant Dr. Koenig assessed that Plaintiff could perform light work (Tr. 87, 99). The ALJ explained that he found Dr. Schwab's opinion unpersuasive because it was based on a one-time examination and inconsistent with the overall medical record. Tr. 26. The ALJ also explained that he found the opinions of Dr. Lawrence and Dr. Koenig unpersuasive because they did not have the opportunity to examine Plaintiff and or review later acquired medical evidence, which reflected greater limitations. *Id*. Thus, the ALJ's decision reflects that he properly considered the entire record, including the objective medical evidence and other evidence of record, and reasonably determined that, while the record did not support Plaintiff's allegations of a disabling impairment, additional limitations beyond those opined by Drs. Schwab, Lawrence, and Koenig were warranted.  Tr. 26. *See* 20 CFR 404.1529 and 416.929. Accordingly, the ALJ reasonably found that Plaintiff retained the RFC to perform a wide range of sedentary work. Tr. 21-26.

With respect to the opinions of Dr. Horvath (Tr. 488) and Dr. Stegemann (Tr. 365), the ALJ explained that he found these opinions unpersuasive, because they were time-limited opinions and because they contained conclusory statements assessing disability under workers' compensation guidelines or rules. Tr. 26. As the ALJ properly noted, disability examiner findings and statements that a claimant is or is not disabled represent opinions on an issue reserved to the

Commissioner, which are inherently neither valuable nor persuasive, and do not even have to be discussed in the ALJ's decision. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (stating some categories of evidence are inherently neither valuable nor persuasive and the ALJ "will not provide any analysis" about how such evidence was considered); *see also* 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i) (including statements that a claimant is disabled in this category of evidence, as they go to an issue reserved to the Commissioner).

Although the ALJ was not required to discuss these statements, he did so, nevertheless, explaining "that these reports were only considered for clinical and diagnostic findings as well as specific functional limitations." Tr. 26. The ALJ further noted that Dr. Horvath's opinion was neither consistent with, nor supported by, the record.   Tr, 26, 488. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability); 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency). Based on the foregoing, the ALJ reasonably found unpersuasive the opinions of Drs. Schwab, Lawrence, Koenig, Horvath, and Stegemann and properly relied on other objective medical evidence in the record, including Plaintiff's treatment notes showing unremarkable physical examination findings, to formulate her RFC. Tr. 21-26.

For example, the ALJ noted Dr. Schwab's January 2020 examination findings indicating that Plaintiff's gait and stance were normal; she had no difficulty getting on and off the examination table or rising from a seated position; she exhibited full ranges of motion throughout her spine, full muscle strength and full ranges of motion throughout her arms and legs; intact hand and finger dexterity; and full grip strength bilaterally. Tr. 24, 684.

The ALJ also noted that orthopedic surgeon Dr. Chertack consistently observed unremarkable physical examination findings. Tr. 23-24, 25. In April 2019, Dr. Chertack observed that Plaintiff's gait was normal; she exhibited no difficulty rising from a seated position or

removing her shoes; exhibited no pain with manipulation; and her feet exhibited full ranges of motion. Plaintiff's left heel exhibited no swelling. Tr. 23, 484. Upon palpitation of the left heel, Dr. Chertack observed that Plaintiff was totally asymptomatic when distracted and she bent forward to put on her shoes and stood up from the examination table with no difficulty. Tr. 23, 485). Dr. Chertack assessed no spinal, right shoulder, or left foot condition; he also noted that Plaintiff's "symptom magnification" was a substantial component of her symptoms and opined that she could return to the full-time work duties. Tr. 23, 485. Likewise, in October 2019, Dr. Chertack observed that Plaintiff had no difficulty rising from a seated position and walking into the examination room; demonstrated no motor, sensory, or reflex deficits; and SLR testing was negative bilaterally. Tr. 24, 493.

The ALJ also noted that Plaintiff's other treating sources similarly observed unremarkable physical examination findings. Tr. 22. For example, in December 2018, about three weeks after Plaintiff's work injury, WNY Immediate Care physician Dr. Ulatowski observed that Plaintiff's gait was normal; she exhibited no difficulty rising from a seated position; she demonstrated full motor strength and normal sensations; denied any spinal complaints; and her left foot exhibited full ranges of motion, no edema, normal heel insertion, and an intact Achilles tendon. Tr. 22, 478.

Treating neurosurgery providers Dr. Roger and Mr. Siejka observed that Plaintiff exhibited no lumbar paravertebral muscle rigidity; SLR testing was negative bilaterally; she demonstrated full muscle strength throughout her arms and legs, full ranges of motion in her hips and shoulders, full grip strength bilaterally. Tr. 23, 25, 331, 340, 352.

In February 2019, orthopedic surgeon Dr. Stegemann observed that Plaintiff's gait was "fairly" normal with some left heel tenderness, and her shoulders exhibited full ranges of motion with some right shoulder tenderness. Tr. 22-23, 365. In March 2019, Dr. Stegemann observed that

Plaintiff's gait was normal, and she was asymptomatic across her knees, ankles, left foot, and right shoulder; he assessed no restrictions due to Plaintiff's left heel contusion and/or her right shoulder strain. Tr. 368-69.

In June 2019, Primary care physician Dr. Amelemah observed that Plaintiff's left foot exhibited full ranges of motion, no swelling, and no tenderness. Tr. 23, 396. Dr. Amelemah further observed that Plaintiff's lumbar spine exhibited merely mild tenderness, and SLR testing was negative. Tr. 23, 396.

The other objective medical evidence of record also supports the ALJ's RFC determination. Tr. 22, 23, 24. In November 2018, x-rays of Plaintiff's left heel were unremarkable. Tr. 22, 291. In February 2019, left ankle x-rays revealed a small plantar heel spur, and right shoulder x-rays were unremarkable. Tr. 23, 755-56. In January 2020, cervical spine x-rays were generally unremarkable except for straightening of the normal lordosis. Tr. 24, 686. Thus, Plaintiff's unremarkable examination findings and other objective medical evidence of record are substantial evidence that supports the ALJ's determination that Plaintiff retained the RFC to perform sedentary work. Tr. 21, 26.

Based on the foregoing, Plaintiff's argument that the RFC lacked evidentiary support from a competent medical opinion fails, because the record provided sufficient evidence from which the ALJ could fashion a well-supported RFC. Here, the record reflects that the ALJ properly evaluated all the relevant evidence, including the opinion evidence, in assessing an RFC for sedentary work that is supported by substantial evidence.

As previously noted, Plaintiff bears the ultimate burden of proving that she was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so."); *Poupore*, 566 F.3d at 306 (it

remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them); *Parker v. Berryhill*, No. 17-cv-252-FPG, 2018 WL 4111191, at *4 (W.D.N.Y. Aug. 29, 2018) (same); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC.").While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do.

Plaintiff's contention that the ALJ failed to adequately develop the evidence of record because he did not obtain additional medical opinion evidence is also meritless. *See* ECF No. 11-1 at 16-18. The ALJ is not obligated to seek further medical records whenever the evidence of record is sufficient for the ALJ to make an informed disability determination. *Lowry v. Astrue*, 474 Fed. Appx. 801, 804 (2d Cir. 2012) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a claim for benefits") (quoting *Rosa*, 168 F.3d at 79 n.5).  Here, the ALJ had all the treatment records that were provided by Plaintiff's treating and examining sources, the examination report from a consultative physician and two state agency medical consultants, as well as Plaintiff's statements in questionnaires and at the hearing about her symptoms, limitations, and daily activities. Tr. 37-46, 58-60, 84-86, 219-48, 285-756. Because the ALJ was able to decide based upon the evidence available, nothing more was required of him. See *Morris v. Berry*hill, 721 F. App'x 25 (2d Cir. 2018) (holding that the record before the ALJ contained sufficient information upon which the ALJ could formulate an RFC and, thus, remand is not required).

Plaintiff's arguments are simply a request for a reweighing of the evidence in her favor, which is inappropriate under the substantial evidence standard of review. *Pellam v. Astrue*, 508 F.

App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Accordingly, Plaintiff's argument is without merit.

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the opinion evidence and Plaintiff's treatment history showing unremarkable physical examination findings, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

      **IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE